# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| | Civil Action No. 11-4887 |
| LOUIS MELILLO, | (SDW) (MCA) |
| Plaintiff, | |
| v. | |
| | **OPINION** |
| ELIZABETH BOARD OF EDUCATION, PABLO MUÑOZ, individually and in his official capacity as Superintendent of Schools, KAREN A. MURRAY, individually and in her official capacity as Executive Director for Human resources, JOHN/JANE DOES 1-30, ABC Corporations 1-10, | December 21, 2012 |
| Defendants. | |

**WIGENTON**, District Judge.

Before the Court is Defendants Elizabeth Board of Education (the "Board"), former Board member Pablo Muñoz ("Muñoz"), and Executive Director for Human Resources Karen Murray's ("Murray") Motion to Dismiss Louis Melillo's ("Plaintiff") Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss").[1]

---

[1] This Motion to Dismiss has been filed on behalf of "the Board, current Board members Carlos Trujillo, Marie Munn, Pastor Raul Burgos, Elcy Castillo-Ospina, Armando Da Silva, John Donoso, Francisco Gonzalez, Fernando Nazco and Paul M. Perreira, former Board member Pablo Munoz, and attorney and Executive Director for Human Resources Karen Murray." (Def. Br. 7.) However, in the Third Amended Complaint, Plaintiff names only the Board, Muñoz, Murray, John/Jane Does 1-30, and ABC Corporations 1-10 as Defendants. (See Third Amended Complaint ("Third Am. Compl.") at ¶ 1.) Additionally, as the docket reflects, as of May 9, 2012, Carlos Trujillo, Marie Munn, Pastor Raul Burgos, Elcy Castillo-Ospina, Armando Da Silva, John Donoso, Francisco Gonzalez, Fernando Nazco and Paul M. Perreira have been terminated from this case. Thus, for purposes of this Motion to Dismiss, this Court will refer to only the Board, Muñoz, and Murray collectively as "Defendants."

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendants' Motion to Dismiss is **DENIED**.

## FACTUAL HISTORY

Since 1994, Plaintiff has been employed by the Board as a custodian in Elizabeth, New Jersey. (Third Am. Compl. ¶¶ 9-10.) At some point during his employment, Plaintiff advanced to the position of tenured head custodian. (Id.)

Plaintiff alleges that throughout his employment, he was asked to support and contribute financially to the Board, Board members' campaigns, and other political organizations that the Board supports. (Id. ¶ 13.) According to Plaintiff, supporting the Board in this way was necessary for job advancement, and that those who did not demonstrate support "suffered adverse employment consequences." (Id. ¶¶ 15-17; 20.) Plaintiff claims he suffered adverse working conditions—namely "Plaintiff was harassed, debased, demeaned, and received horrible and vindictive treatment"—in retaliation for refusing to support and contribute to the Board. (See id. ¶¶ 27-28.)

Plaintiff further alleges that the Board "used the legal process to harass, extort, and to attempt to intimidate Plaintiff into forfeiting his employment and pension." (Id. ¶ 33.) Beginning in the Summer of 2004, Plaintiff was accused of criminal sexual contact and related crimes with students. (See id. ¶¶ 29-40.) On or about July 13, 2004, criminal charges were brought against Plaintiff. (Id. ¶ 31.) Subsequently, the Board brought tenure charges against Plaintiff. (Id. ¶ 36.) During the pendency of the tenure charges, Plaintiff was suspended without

pay.  (Id. ¶¶ 36, 38.)  Plaintiff alleges that Defendants were "motivated by malice, to fabricate evidence against Plaintiff in order to successfully prosecute him, with consequent forfeiture of his employment and pension in furtherance of the Board's objectives of retaliating against Plaintiff."  (Id. ¶ 40.)

On or about September 27, 2005, Plaintiff was acquitted of all criminal charges at a Superior Court bench trial.  (Id. ¶¶ 43-44.)  After the acquittal, the Board "changed the status of Plaintiff's unpaid suspension to a paid suspension, thereby demonstrating it was aware of the acquittal."  (Id. ¶ 46.)   Additionally, post-acquittal, Plaintiff claims that the Board wrongfully sought and obtained a finding of sexual abuse from Division of Youth and Family Services ("DYFS").  (Id. ¶ 45.)  In 2007, the DYFS findings were modified to reflect that the allegations of abuse were unsubstantiated.  (Id. ¶ 48.)

On September 20, 2010, the Administrative Law Judge dismissed the tenure charges against Plaintiff and the Acting Commissioner of Education upheld the decision on November 4, 2010.  (Id. ¶¶ 52-53.)  The Board appealed the dismissal of the tenure action and a decision is currently pending.  (Id. ¶ 54.)  Because of the pending tenure charges, Plaintiff claims that his pay increase has been withheld.  (Id. ¶ 49.)

Plaintiff returned to work on June 1, 2011, but he was demoted to a regular custodian (rather than head custodian), was assigned to a different shift "at a worse and more dangerous school," and was paid at his 2004 rate.  (Id. ¶¶ 55, 61-62.)  Plaintiff further claims he was deprived of approximately 100 accumulated sick days.  (Id. ¶ 63.)

**PROCEDURAL HISTORY**

On August 23, 2011, Plaintiff filed the instant action in the United States District Court for the District of New Jersey.  On December 12, 2011, Defendants moved to dismiss Plaintiff's

initial eleven-count Complaint in its entirety and on December 23, 2011, Plaintiff filed a cross-motion to amend the Complaint.[2]  The motion to dismiss was denied and the cross-motion to amend the complaint was granted.[3]

On February 13, 2012, Plaintiff filed a cross-motion for leave to amend the First Amended Complaint and Defendants filed a motion to dismiss soon thereafter.  On April 20, 2012, the second motion to amend the complaint was granted.  On May 9, 2012, Plaintiff filed the Second Amended Complaint.  On May 23, 2012, Defendants filed a motion to dismiss the Second Amended Complaint.  The motion to dismiss the Second Amended Complaint was granted as to Counts Three, Six, Seven, Eight, Nine, Ten and Eleven of the Second Amended Complaint, and denied as to Counts One, Two, Four and Five.

On August 17, 2012, the Plaintiff filed the Third Amended Complaint containing four counts.[4]  On September 4, 2012, Defendants filed this motion to dismiss Plaintiff's Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss").

**STANDARD OF REVIEW**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to

---

[2] Plaintiff alleged eleven counts in the original Complaint including: (1) § 1983 Claim for violation of First Amendment right to freedom of speech of government employee; (2) violation of the New Jersey Civil Rights Act; (3) violation of terms of employment, including statutory protections and school policy, rules and regulations, and Board policy manual; (4) common law malicious prosecution/malicious use of process; (5) common law malicious abuse of process; (6) civil liability for conspiracy contrary to N.J.S.A. 2C:41-1 et seq. ("N.J. RICO"); (7) civil liability for conspiracy contrary to 18 U.S.C. § 1962 ("RICO"); (8) disparate treatment due to disability in violation of N.J.S.A. 10:5-1 et seq. ("LAD"); (9) hostile work environment due to disability in violation of the LAD; (10) aiding and abetting discrimination in violation of the LAD; and (11) punitive damages. (See Compl., Counts 1-11.)
[3] The First Amended Complaint re-asserts the same counts as the initial Complaint with the exception that the Count Eleven for punitive damages is reserved and incorporated into other counts.  (See Am. Compl., Count 11.)
[4] Plaintiff sets forth four counts numbered as the First, Second, Third, and Fifth Counts.  There is no "Fourth" Count.

relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). Id.

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as a whole) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

**DISCUSSION**

**I.    Count One: 42 U.S.C. § 1983 Claim for Violation of the First Amendment Right to Freedom of Speech of Government Employee**

Section 1983 creates a federal remedy for individuals deprived by state officials of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; see generally Gonzaga Univ. v. Doe, 536 U.S. 273 (2002). Section 1983 does not confer new individual rights, but rather provides a remedy for rights in the Constitution or under federal law. See Gonzaga, 356 U.S. at 285-86; Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997). To establish a claim under § 1983, Plaintiff must meet two requirements: "[1] allege the violation of a right secured by the Constitution and laws of the United States, and [2] show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). With respect to the first element, Plaintiff alleged a violation of his First Amendment right to freedom of speech.[5] As to the second element, Plaintiff alleged that the Board and individuals Muñoz and Murray—in their personal and professional capacities—violated his rights acting under the color of state law.

**A.  Individual and Personal Involvement of Defendants Muñoz and Murray**

As the Third Circuit has held, "a[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). A complaint must "allege facts, that, if proven, would show . . . personal involvement"

---

[5] For the purposes of this Motion to Dismiss, this Court will not further address the first element as it has not been disputed.

of the individual Defendants.  <u>Evancho</u>, 423 F.3d at 535.  "[A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."  <u>Id.</u> at 535.

Defendants contend that "Plaintiff does not meet his burden of pleading state action and/or individual and personal involvement by Defendants."  (Def. Br. 11-12.)  However, in the Third Amended Complaint, Plaintiff specifically alleged that Muñoz took adverse actions against him "as evidenced by correspondence [ ] and his overall conduct and actions of tacit approval of the malicious actions and treatment of the Plaintiff."  (Third Am. Compl. ¶ 60.)  Furthermore, Plaintiff alleged that he "was **not** returned to his former position as head custodian, to his former shift, or to his former pay, and this was at the direction of Defendant [Murray] who had total control over the Plaintiff's dire plight and situation."  (<u>Id.</u> ¶ 61) (emphasis in original).  Plaintiff further alleged that he was assigned to a "worse and more dangerous school" and "continues to be paid at his 2004 rate" at Murray's direction.  (<u>Id.</u> ¶ 62.)  Lastly, Plaintiff alleges that Muñoz and Murray were both involved in depriving Plaintiff of approximately 100 vacation days without warning, at the direction of Murray.  (<u>Id.</u> ¶ 63.)  This Court finds that Plaintiff has sufficiently alleged individual and personal involvement of Muñoz and Murray in his Third Amended Complaint such that they are advised of the charges.

### B. The Board's Policy, Practice, or Custom That Caused Plaintiff's Alleged Deprivation of His Civil Rights

Generally, a public entity may not be liable under § 1983 for the actions of its employees unless the injury is the result of the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  <u>Monell v. Dep't of Soc. Servs. Of City of New York</u>, 436 U.S. 658, 694 (1978).  The Third Circuit has articulated three situations in which a public entity may be liable under § 1983: (1) the alleged injury results from a public employee implementing a "generally applicable

statement of policy"; (2) although there is no stated policy, the policymaker acts in violation of a federal law; and (3) "the policymaker has failed to act affirmatively at all, . . . [such] that the policymaker can reasonably be said to have been deliberately indifferent to the [obvious] need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (internal citations and quotations omitted).

Defendants argue that Plaintiff fails to "demonstrate that [the] Board had a policy, practice or custom that caused the alleged deprivation of his rights." (Def. Br. 11-12.) In his Third Amended Complaint, Plaintiff alleges that the Board "has an unwritten policy of making personnel decisions based on patronage that runs contrary to its legal obligations, requirements and mandates imposed on it by Federal and State laws." (Third Am. Compl. ¶ 12.) He further alleges that the "financial solicitations . . . [were] widespread occurrence[s] amongst Board employees not limited to Plaintiff." (Id. ¶ 18.) According to Plaintiff, "those who did not give political financial contributions were harassed, mistreated, and discriminated against in violation of law." (Id. ¶ 22.) Plaintiff states that he was harmed by his refusal to make political financial contributions, specifically he was "assigned extra work . . . that head custodians were typically not assigned." (Id. ¶¶ 27-28.) At this juncture, this Court finds that Plaintiff has sufficiently alleged a policy, practice, or custom that caused the alleged deprivation of Plaintiff's rights.

## II.    Count Two: New Jersey Civil Rights Act Violation

In addition to his § 1983 claim, Plaintiff alleges a violation of the New Jersey Civil Rights Act ("NJCRA") and points to the "direct violation of his entitlement of guaranteed rights to freedom of speech and association under the . . . NJ Const. 1:6, and N.J. Const. 1:18." (Third Am. Compl. ¶ 69.) Defendant contends that Plaintiff failed to sufficiently allege this claim. (Def. Br. 11-15.)

"This district has repeatedly interpreted NJCRA analogously to § 1983." Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011); see also Hurdleston v. New Century Financial Servs., Inc., 629 F. Supp. 2d 434, 443 (D.N.J. 2009) (NJRA operates as an analog to § 1983); Armstrong v. Sherman, No. 09-716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("The New Jersey Civil Rights Act is a state law corollary to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights secured under the New Jersey Constitution[;] . . . [it] is a kind of analog to section 1983.")

As this Court has already determined that Plaintiff sufficiently alleged a § 1983 claim, this Court also finds that Plaintiff sufficiently alleged a violation of the NJCRA.

## III. Count Three: Common Law Malicious Prosecution and Malicious Use of Process

To establish a malicious prosecution action, Plaintiff must establish: "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Lind v. Schmid, 67 N.J. 255, 262 (1975). A malicious use of process claim is similar to a malicious prosecution claim in that a plaintiff must establish the "civil counterparts" of the above-mentioned elements along with the additional element of a "special grievance" caused by the process. LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009) (stating that "the special grievance is designed to take the place of the injurious effects, including arrest, restraint, or the attendant humiliation of being held on bail, finger-printed, and photographed, that ordinarily flow from a wrongfully instituted criminal charge").

Defendants contend that Plaintiff "fails to adequately state a cause of action as to his malicious prosecution and/or malicious use of process claims." (Def. Br. 16.) This Court finds

that Plaintiff has sufficiently pled the elements of malicious prosecution and use of process claims in his Third Amended Complaint.

### A.  Criminal Action Instituted by Defendant Against Plaintiff

A plaintiff can satisfy the first element for common law malicious prosecution and malicious use of process by demonstrating that defendant filed a criminal complaint against plaintiff.  See e.g., Taffaro v. Taffaro, No. DC-0778-10, 2011 WL 6014225, at \*2 (App. Div. Dec. 5, 2011) (finding that plaintiff satisfied the first element of a malicious prosecution claim in "alleg[ing] that defendant filed a criminal complaint against him").  Plaintiff alleges in the Third Amended Complaint that the "actions of the Board and the individual Defendants Pablo Muñoz and Karen A. Murray" instigated the criminal and tenure proceedings against Plaintiff.  (Third Am. Compl. ¶ 71.)  At this juncture, Plaintiff has sufficiently pled the first element.

### B.  Showing of Malice and Absence of Probable Cause

The second and third elements of malice and probable cause are related.  See LoBiondo, 199 N.J. at 93.  Malice is the "intentional doing of a wrongful act without just cause or excuse." Id. at 93-94 (quoting Jobes v. Evangelista, 369 N.J. Super. 384, 398 (App. Div. 2004)). Generally, "the less evidence of probable cause there is, the more likely it is that the original plaintiff was motivated by an impermissible, malicious intent.  We have therefore recognized that proof of probable cause may be relevant to proof of malice."  Id. at 94; see also Westhoff v. Kerr S.S. Co., 219 N.J. Super. 316, 323 (App. Div. 1987) (recognizing that in a malicious prosecution suit, malice may be inferred from a lack of probable cause).

As the New Jersey Supreme Court has held, "[p]robable cause is a matter of law" and is not submitted to the jury unless "the facts giving rise to probable cause are themselves in dispute."  LoBiondo, 199 N.J. at 93.  The inquiry uses an objective analysis using "the

reasonable prudent person standard." Id.  "The Plaintiff must demonstrate that at the time [w]hen the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinarily prudent individual in believing that an offense had been committed." Lind, 67 N.J. at 263; see also Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 398 (2009).

In this matter, the second and third elements of malice and probable cause are related. Plaintiff alleged that Defendants were "motivated by malice, to fabricate evidence against Plaintiff in order to successfully prosecute him, with consequent forfeiture of his employment and pension in furtherance of the Board's objectives of retaliating against Plaintiff." (Third Am. Compl. ¶ 40.)  Additionally, Plaintiff alleges that "[t]he Superior Court Judge who was conducting the bench trial stated that the State, which was required to prove its case beyond a reasonable doubt, had not even proved its case by the civil standard of preponderance of the evidence." (Id. ¶ 44.)  Based on these pleadings, it is plausible that there was no probable cause related to the allegations underlying the criminal and civil proceedings.  As malice can be inferred from the lack of probable cause, Plaintiff has set forth sufficient factual allegations to satisfy the second and third elements of malicious prosecution and malicious use of process claims.

### C.  Criminal Proceedings Terminated in Favor of Plaintiff

The fourth element, that the proceedings terminated favorably for Plaintiff, is not at issue. There is no dispute that both the criminal proceeding and the tenure action concluded in the Plaintiff's favor.  (See Third Am. Compl. ¶¶ 44, 52.)

### D.  Special Grievance for Malicious Use of Process Claim

To establish a claim for malicious use of process, the Plaintiff must allege a special grievance.  A "'[s]pecial grievance' consists of an interference with one's liberty or property and

includes events such as the filing of a bankruptcy petition, granting an injunction, filing a lis pendens or wrongful interference with the possession or enjoyment of property." Klesh v. Coddington, 295 N.J. Super. 51, 63 (N.J. Sup. Ct. 1996). Lawyer's fees, mental or emotional distress, and reputational damage do not constitute a special grievance. See Klesh, 295 N.J. Super. at 63.

Plaintiff alleged that he suffered economically because was unable to work, was denied a pay increase, and was deprived of approximately 100 sick days. (Third Am Compl. ¶¶ 38, 49-50, 63.) He further alleges that he was returned to a less favorable position at a less favorable location and shift after the tenure action. (Id. ¶¶ 55, 61-62.) At this stage, Plaintiff has provided a sufficient factual basis to plead a special grievance.

## IV.    Count Five: Malicious Abuse of Process

Malicious abuse of process is a different tort from malicious use of process in that "[t]he tort of malicious abuse of process lies not for commencing an improper action, but for misusing or misapplying process after it is issued." Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 431-32 (App. Div. 2009) (internal citations and quotations omitted); see also Tedards v. Auty, 232 N.J. Super. 541, 549 (App. Div. 1989) (quoting Ash v. Cohn, 119 N.J.L. 54, 58 (1937) ("[T]he distinction between malicious use and malicious abuse of process is that the malicious use is the employment of process for its ostensible purpose, although without reasonable or probable cause, whereas the malicious abuse is the employment of a process in a manner not contemplated by law.").)

"[P]rocess has not been abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing 'further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." Tedards, 232 N.J. Super. at 550. "In

order for there to be 'abuse' of process, therefore, a party must 'use' process in some fashion, and that use must be 'coercive' or 'illegitimate.'" Hoffman, 404 N.J. Super. at 431-32.  When reviewing a malicious abuse of process claim, a court's "focus must not be on what prompted the suit but what action plaintiff engaged in after commencement of the action."  Id. at 431.

In the instant matter, Plaintiff has alleged sufficient facts regarding a malicious abuse of process claim to survive a motion to dismiss.  Plaintiff alleges multiple "further acts" after the issuance of process that demonstrate Defendants' allegedly ulterior motive.  Plaintiff specifically alleges the following acts of Defendants: (1) they "protract[ed] the tenure litigation for false, pretextual, and spurious reasons in order to prolong and heighten the personal cost to Plaintiff"; (2) Plaintiff was assigned to "a rubber room" when his cross examination was scheduled to begin; (3) with respect to the criminal proceedings, Defendants blocked and opposed Plaintiff's admission into Pretrial Intervention; (4) Defendants "[a]ttempt[ed] to undo Plaintiff's expungement after he was found not guilty in the criminal matter," and (5) Defendants "fil[ed] a DYFS complaint after Plaintiff's acquittal of criminal charges."  (Third Am. Compl ¶¶ 86-87.) Plaintiff alleges that Defendant's coercive ulterior motives were to make the underlying litigation more costly to the Defendant and also prevent the Defendant from continuing his employment. (Id. ¶ 88.)  This Court finds that Plaintiff has sufficiently alleged a malicious abuse of process claim.

## V.   Conclusion

For the reasons stated above, this Court **denies** Defendant's Motion to Dismiss.


s/Susan D. Wigenton, U.S.D.J.

Cc:   Madeline Cox Arleo, U.S.M.J.